UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JESSICA A. MENDES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:19 CV 1501 CDP |
| | ) | |
| JH PORTFOLIO DEBT EQUITIES, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Jessica A. Mendes moves for default judgment against defendant JH Portfolio Debt Equities on her claim for damages and injunctive relief under the Fair Debt Collection Practices Act (FDCPA), the Consumer Credit Protection Act (CCPA), and "the Consumer Credit Statute." Mendes proceeds in this action *pro se*. For the reasons that follow, I will grant Mendes's motion on her FDCPA claim and enter judgment in her favor in the amount of $1485. I will deny the motion to the extent Mendes seeks judgment on a claim reasonably construed as one brought under the Fair Credit Reporting Act (FCRA), which is a subchapter of the CCPA.

**Background**

Mendes's complaint alleges that in July 2018, JH Portfolio took over a collections account on which she had been making payments through Alpha Recovery. Mendes received no notice of this transition. In December 2018,

Mendes began investigating the status of her account because she had not received any receipts from Alpha and she had noticed that Alpha was no longer deducting payments from her account. In response to Mendes's inquiries, Alpha informed her that JH Portfolio had taken over the account and had told Alpha to stop taking payments from Mendes. Mendes thereafter attempted to contact JH Portfolio by telephone and email; she left messages but received no response. Mendes thereafter attempted to call to set up a payment plan with JH Portfolio, but its telephone numbers were no longer in service.

In the meanwhile, JH Portfolio made false and negative entries on Mendes's credit report. Mendes emailed customer service and received a response that JH Portfolio would contact her by telephone. No call ever came. Mendes contacted her credit union to dispute the negative entries and to explain her inability to communicate with JH Portfolio. The credit union gave Mendes a telephone number that JH Portfolio had provided regarding Mendes's inquiries – "(555) 555-5555." Eventually finding a telephone number for JH Portfolio, Mendes called in April 2019 and spoke to "Heather," who advised that an agent would contact her within five to seven days regarding her concerns. JH Portfolio never contacted Mendes.

Mendes alleges that JH Portfolio made false and negative statements on her credit report and did not timely send her a notice summarizing her debt. She

claims that because of JH Portfolio's false statements, she 1) is paying a higher interest rate on a loan, 2) has been turned down for other loans, and 3) suffers emotional distress. As relief, she seeks $5000 in punitive damages and for emotional distress, reimbursement of her "legal and traveling costs," an order expunging the false negative remarks from her credit report, and an order directing JH Portfolio to release her debt to another creditor that has no connection with JH Portfolio. She does not seek statutory damages.

Mendes filed her verified complaint in this Court on May 24, 2019, and JH Portfolio was served with summons and complaint on July 15, 2019. JH Portfolio did not respond to the complaint, however, and on August 30, 2019, the Clerk of Court entered default against JH Portfolio. Notice of this entry of default was mailed to JH Portfolio at the address listed on the summons' return of service. Mendes now seeks default judgment against JH Portfolio in the amount of $5485, which is comprised of $5000 for actual and punitive damages, $400 for the filing fee, and $85 for the service-of-process fee. Mendes also seeks an injunction, ordering JH Portfolio to release her debt to a new creditor with which it has no relation.

In support of her motion, Mendes submits her affidavit in which she relies on the information of record, restates her allegations against JH Portfolio, and sets out the requested relief.

**Discussion**

Where default has been entered, the allegations of the complaint are taken as true, except as to the amount of damages; it then "remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010) (internal quotation marks and citation omitted).

<u>Fair Debt Collection Practices Act</u>

The FDCPA was enacted as part of the Consumer Credit Protection Act, in part, to "eliminate abusive debt collection practices by debt collectors[.]" 15 U.S.C. § 1692(e). Among other things, the statute sets forth the duties of a debt collector regarding its representations made in connection with the collection of a debt, § 1692e, as well as its duties regarding notices of debt, § 1692g. Under § 1692e(8), a debt collector may not communicate or threaten to communicate to any person "credit information which is known or which should be known to be false[.]" Under § 1692g(a), a debt collector must, within five days after initial communication with a consumer in connection with the collection of a debt, send the consumer a written notice containing:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion

thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

Here, the complaint's unchallenged factual allegation that JH Portfolio communicated false information to Mendes's credit report states facts sufficient to constitute a violation of § 1692e(8). Likewise, the complaint alleges facts sufficient to constitute a violation of § 1692g(a) given JH Portfolio's failure to provide written notice to Mendes of debt information within five days after initial communication regarding collection of the debt.

Any debt collector who violates § 1692 with respect to any consumer is liable to that consumer for money damages – specifically, for actual damages and "such additional damages as the court may allow, but not exceeding $1,000[.]" 15 U.S.C. § 1692k(a)(1), (2)(A). A successful litigant is also entitled to recover their costs of the action. 15 U.S.C. § 1692k(a)(3). In determining the amount of liability, I must consider, among other relevant factors, "the frequency and persistence of noncompliance by the debt collector, the nature of such

noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1).  Injunctive relief is not available to an individual plaintiff under the FDCPA.  *Young v. LVNV Funding, LLC*, No. 4:12CV01180AGF, 2012 WL 5508407, at *4 (E.D. Mo. Nov. 14, 2012).  Nor are punitive damages available, as § 1692k does not provide for them.  *E.g., Desmond v. Phillips & Cohen Assocs., Ltd.,* 724 F. Supp. 2d 562, 563 n.1 (W.D. Pa. 2010).

"Actual damages" recoverable under the FDCPA include damages for mental anguish and emotional distress.  *Missey v. Watson Acquisition Grp., LLC*, No. 4:10CV01788 AGF, 2011 WL 864901, at *1 (E.D. Mo. Mar. 10, 2011); *Jenkins v. E. Asset Mgmt., LLC*, No. 4:08-CV-1032 CAS, 2009 WL 2488029, at *3 (E.D. Mo. Aug. 12, 2009).  In her verified complaint, Mendes declares that as a result of JH Portfolio's conduct, she is paying a higher interest rate on a loan; she cannot obtain other loans; she is forced to live with family and is unable to move out, even to rent; and, generally, she cannot move forward in her life, feeling "trapped" and "essentially stuck" in a situation she did not create.  Mendes does not quantify the amount of her actual damages.[1]

Upon consideration of the unchallenged facts set out in the verified complaint and the factors set forth in § 1692k(b)(1), I will award Mendes $1000 in

---

[1] Mendes requests $5000 for actual and punitive damages but does not delineate the specific amount sought for each.  As addressed above, Mendes cannot recover punitive damages on an FDCPA claim.

actual damages for her emotional distress and mental anguish. This amount is appropriate based on Mendes's repeated efforts to contact JH Portfolio to inquire about and clarify her debt repayment status and JH's Portfolio's roadblock tactics in discouraging these efforts, including its failure to provide notice to Mendes that it had taken over the collection account, its failure to provide contact information, its provision of blatantly false contact information, and its repeated misrepresentations that an agent would contact her regarding her inquiries and then failing to do so. JH Portfolio's intentional conduct shows a knowing disregard of its legal responsibilities under the FDCPA and to Mendes as a consumer. Its provision of false information, failure to communicate, and continued misrepresentations affected Mendes's ability to secure future loans and enjoy an error-free credit report, thereby causing her to feel "stuck" and unable to move forward in life.

Accordingly, I will enter judgment for Mendes and against JH Portfolio in the amount of $1000 for actual damages on her FDCPA claim. I will also award her the full costs of this action. But because Mendes cannot recover punitive damages or injunctive relief under the FDCPA, I will deny her request for judgment thereon. Nor will I award any statutory damages given Mendes's failure to request them.

Fair Credit Reporting Act

As an initial matter, I note that while Mendes does not specifically cite to the FCRA in her *pro se* complaint, she raises allegations of misconduct covered by the FCRA. Because the FCRA is a subchapter of the CCPA, which Mendes does specifically cite, I construe her complaint as asserting a claim under the FCRA. *Cf. O'Hanlon's Millstone v. O'Hanlon Reports, Inc.*, 528 F.2d 829, 832 n.3 (8th Cir. 1976) (FCRA is subchapter of CCPA).

The FCRA regulates credit reporting procedures to ensure the confidentiality, accuracy, relevancy, and proper utilization of consumers' information. *See* 15 U.S.C. § 1681(b). As part of this regulatory scheme, the FCRA imposes several duties on those who furnish information to consumer reporting agencies (CRAs). *See* 15 U.S.C. § 1681s-2. Among these are duties to refrain from knowingly reporting inaccurate information, *see* § 1681s-2(a)(1), and to correct any information they later discover to be inaccurate, *see* § 1681s-2(a)(2).

Consumers have the right to dispute any information reported to a CRA. *See* 15 U.S.C. § 1681g(c)(1)(B)(iii); *see also* 15 U.S.C. §§ 1681i(a)(1)(A), 1681s-2(a)(8). However, a consumer does not have a private right of action to enforce any subsection of 15 U.S.C. § 1681s-2(a), including (a)(1) or (a)(2). *See Somlar v. Nelnet Inc.*, No. 4:16-CV-01037-AGF, 2017 WL 35703, at *4 (E.D. Mo. Jan. 4, 2017); *see also Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir.

2012) (citing cases). Indeed, the statute plainly restricts enforcement of § 1681s-2(a) to federal and state authorities. 15 U.S.C. § 1681s-2(d); *McWilliams v. Chase Home Fin., LLC*, No. 4:09CV609 RWS, 2010 WL 1817783, at *3 (E.D. Mo. May 4, 2010) ("[A]s § 1681s-2(d) indicates, enforcement of § 1681s-2(a) is limited to federal agencies and officials and state officials identified § 1681s.").

"'[T]he FCRA does permit an individual to bring a claim under § 1681s-2(b) against a furnisher of information,' for failing in certain duties imposed on such furnishers *after* they receive a notice of dispute from a credit reporting agency." *Somlar*, 2017 WL 35703, at *5 (quoting *Drew v. Capital One Bank (USA) N.A.*, No. 1:16CV00095 SNLJ, 2016 WL 3402540, at *2 (E.D. Mo. June 21, 2016)) (alteration and emphasis in *Somlar*). "But notice of disputed information provided directly by the consumer to a furnisher does not trigger the duties of investigation under section 1681s-2(b)." *Id.* (internal quotation marks and citation omitted). A cause of action arises under § 1681s-2(b) only if the furnisher received notice from a CRA, not from the consumer, that the credit information is in dispute. *Id.*

Here, Mendes alleges only a violation of subsection (a) – that JH Portfolio knowingly disclosed false information. *See* 15 U.S.C. § 1681s-2(a)(1). But she cannot maintain a private cause of action against JH Portfolio under § 1681s-2(a). Although the facts in the complaint are sufficient to show that Mendes notified JH Portfolio directly of her dispute, there is no allegation that she gave notice of the

dispute to a CRA.  Nor is there any allegation that JH Portfolio received notice of the dispute from any CRA.  The facts in the complaint are therefore insufficient to state a claim under § 1681s-2(b).  *See Somlar*, 2017 WL 35703, at *5.  I therefore may not enter judgment for Mendes on her FCRA claim.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Jessica A. Mendes's motion for default judgment [11] is granted in part and denied in part.  Plaintiff shall have judgment against defendant JH Portfolio Debt Equities on her claim brought under the Fair Debt Collection Practices Act in the total amount of $1485, which is comprised of $1000 in actual damages and $485 in court costs.  Plaintiff shall recover nothing on her claim brought under the Fair Credit Reporting Act.

An appropriate default judgment is entered herewith.

                                              CATHERINE D. PERRY
                                              UNITED STATES DISTRICT JUDGE

Dated this 2nd day of October, 2019.